## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ORANGEBURG DIVISION

| | | |
|---|---|---|
| Naresh C. Arora and Sudha Arora, | ) | Civil Action No. 5:14-cv-00018-JMC |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Captain James; Regional Medical Center of | ) | |
| Orangeburg; Denmark Technical College, | ) | |
| an agency of State of South Carolina, a | ) | |
| governmental entity; Chief Wilbur Wallace; | ) | **ORDER AND OPINION** |
| Donald Williams; Joann Boyd-Scotland; | ) | |
| Ambrish Lavania, individually (at their | ) | |
| personal capacity) and as agents and | ) | |
| employees for Denmark Technical College; | ) | |
| Does 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiffs Naresh C. Arora ("NCA") and Sudha Arora (together "Plaintiffs") filed this action pro se against Defendants Captain James ("James"); Regional Medical Center of Orangeburg ("RMC"); Denmark Technical College ("DTC"), an agency of the State of South Carolina, a governmental entity; Chief Wilbur Wallace ("Wallace"); Donald Williams ("Williams"); Joann Boyd-Scotland ("Boyd-Scotland"); Ambrish Lavania ("Lavania"), individually (at their personal capacity) and as agents and employees for Denmark Technical College; and Does 1-100[1] alleging claims for violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654; deprivation of civil rights pursuant to 42 U.S.C. §§ 1983, 1988; and false imprisonment. (ECF No. 1.)

This matter is now before the court on (1) James and RMC's Motion for Summary Judgment (ECF No. 95) pursuant to Fed. R. Civ. P. 56 (the "Rule 56 Motion"); (2) a Rule 56

---

[1] The court notes that Plaintiffs have neither identified "Does 1-100" nor served them in this matter. The court agrees with the Magistrate Judge that these unidentified individuals should be dismissed form this action without prejudice. (See ECF No. 142 at 8 n.4 (citing Fed. R. Civ. P. 4(m)).)

Motion (ECF No. 103) by Defendants Boyd-Scotland, DTC, Lavania, Wallace, and Williams (collectively the "DTC Defendants"); (3) NCA's filings construed as Motions for Discovery (ECF Nos. 125 & 127[2]); and (4) Plaintiff's Motion to Amend the [Amended] Complaint (ECF No. 137). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On June 29, 2015, the Magistrate Judge issued a Report and Recommendation (the "Report") (ECF No. 142) in which she recommended that the court grant James and RMC's Rule 56 Motion, dismiss without prejudice the Amended Complaint against DTC Defendants for lack of service, and deny (or terminate as moot) Plaintiffs' pending Motions. Thereafter, Plaintiffs filed 2 sets of Objections to the Magistrate's Report and Recommendation (the "Objections") requesting judgment in their favor or the opportunity to conduct discovery to oppose the pending Rule 56 Motions. (ECF Nos. 144 & 145.) For the reasons set forth below, the court **GRANTS** James and RMC's Rule 56 Motion, **DENIES** NCA's Motions for Discovery, **DENIES AS MOOT** Plaintiffs' Motion to Amend the Amended Complaint, and **DISMISSES WITHOUT PREJUDICE** the Amended Complaint as to DTC Defendants.

## I.     JURISDICTION

This court has jurisdiction over this matter in part pursuant to 42 U.S.C. § 1983, which permits an injured party to bring a civil action against a person who, acting under color of state law, ordinance, regulation, or custom, causes the injured party to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws." Id. The court also has

---

[2] Plaintiff titled ECF No. 125 as Plaintiff NCA's Affidavit/Declaration Requesting to Allow Discovery to Properly Oppose Counsel Jett's Motion for Summary Judgment and ECF No. 127 as Plaintiff NCA's Affidavit/Declaration Requesting to Allow Discovery to Properly Oppose Counsel Fox's Motion for Summary Judgment. The court effectively denied ECF No. 125 in a Text Order filed on April 24, 2015, finding that Plaintiff did not "appropriately fail[] to conduct discovery because he was awaiting a ruling by the court on the aforementioned objection/appeal." (ECF No. 128.)

concurrent jurisdiction with the state court over claims arising under the FMLA. 29 U.S.C. § 2617(a)(2).

## II. RELEVANT BACKGROUND TO THE PENDING MOTIONS

The Magistrate Judge's Report contains a recitation of the relevant factual and procedural background of the matter. (See ECF No. 142 at 2.) The court concludes upon its own careful review of the record that the Report's factual and procedural summation is accurate, and the court adopts this summary as its own. The court will only recite herein background facts pertinent to the analysis of the pending Motions.

Plaintiffs allege that DTC employed NCA as an instructor in DTC's Electronics Technology Program from January 4, 2010 until January 4, 2012. (ECF No. 65 at 2 ¶¶ 3, 4.) After NCA was admitted to RMC on December 31, 2011, as a result of complications from a prior surgical procedure, Lavania in her role as Dean of DTC's Department of Industrial and Applied Technology allegedly granted NCA's request for FMLA leave. (Id. at 3 ¶ 6, 4 ¶¶ 22–25.) On January 4, 2012, Wallace and Williams of DTC's Police Department allegedly entered NCA's room at RMC "without permission . . . [or] any warrant or court order." (Id. at 5 ¶ 28.) Wallace and Williams presented NCA with an envelope containing a letter, which document was signed by Boyd-Scotland and notified NCA that his job at DTC was terminated. (Id.) Wallace and Williams also allegedly searched NCA's belongings, demanded he return his office keys and all college related books, and refused to allow him to use the restroom. (Id. at ¶¶ 29–30.) Plaintiffs further allege that James, a security guard at RMC, watched Wallace and Williams's conduct "while standing outside the [hospital] room and [he] did not take any action of ordering Defendants Wall[ace] and Will[iams] to leave." (Id. at ¶ 32.)

Based on the foregoing events, Plaintiffs filed a pro se Complaint on January 2, 2014,

alleging violation of the FMLA (Count 1[3]), deprivation of their civil rights (Count 2[4]), and false imprisonment (Count 3[5]).  (ECF No. 1 at 6–13.)  On January 27, 2014, the court entered an Order instructing Plaintiffs to bring the case into proper form by February 20, 2014.  (ECF No. 11.)  On March 6, 2014, the court entered an Order acknowledging that the case was now in proper form and construing the pro se Complaint as containing the following causes of action:

> (1) as to Defendants Lavania, Boyd-Scotland, and Denmark Technical College, claims of discrimination and retaliation under the Family Medical Leave Act; discrimination under Title VII; and violation of due process under the Fourteenth Amendment; [and]

> (2) as to Defendants Wallace, Williams, James, and Regional Medical Center, Fourth Amendment claims of the right to be free from unreasonable search and false imprisonment; and a state law claim of intentional infliction of emotional distress.

(ECF No. 33 at 2.)  Subsequently, on September 23, 2014, Plaintiffs amended their Complaint to allege violation of the FMLA (Count 1[6]), deprivation of civil rights regarding NCA's termination (Count 2[7]), medical malpractice (Count 3[8]), deprivation of civil rights regarding an unreasonable search (Count 4[9]), deprivation of civil rights in a conspiracy to interfere with equal protection rights (Count 5[10]), intentional infliction of emotional distress (Count 6[11]), and false imprisonment (Count 7[12]).  (ECF No. 65.)

On February 20, 2015, James and RMC filed a Rule 56 Motion asserting that they were entitled to summary judgment on Counts 4, 6, and 7 and were immune from suit pursuant to

---

[3] Count 1 was brought against Boyd-Scotland, Lavania, and DTC.  (ECF No. 1 at 6.)
[4] Count 2 was brought against James, RMC, Wallace, Williams, Boyd-Scotland, Lavania, and Does 1-100.  (Id. at 8.)
[5] Count 3 was brought against James, Wallace, and Williams.  (Id. at 12.)
[6] Count 1 was brought against Boyd-Scotland, Lavania, and DTC.  (ECF No. 65 at 7.)
[7] Count 2 was brought against Boyd-Scotland and Lavania.  (Id. at 9.)
[8] Count 3 was brought against RMC.  (Id. at 11.)  However, the Magistrate Judge denied Plaintiff's Motion to Amend to add this claim.  (See ECF No. 62 at 3.)
[9] Count 4 was brought against RMC, James, Wallace, and Williams.  (Id. at 12.)
[10] Count 5 was brought against Boyd-Scotland, Wallace, Williams, and Does 1-100.  (Id. at 15.)
[11] Count 6 was brought against RMC, Wallace, Williams, and James.  (Id. at 18.)
[12] Count 7 was brought against James, Wallace, and Williams.  (Id. at 19.)

qualified immunity.  (ECF No. 95.)  On February 26, 2015, DTC Defendants filed a Rule 56 Motion asserting that they were entitled to either dismissal of the Amended Complaint for improper and/or insufficient service of process or, in the alternative, summary judgment because of the lack of evidence supporting the claims against them.  (ECF No. 103.)  Plaintiffs filed opposition to both pending Rule 56 Motions on April 17, 2015.  (ECF Nos. 124 & 126.)  Also on April 17, 2015, NCA filed his Motions for Discovery, which Motions were opposed by Defendants.  (ECF Nos. 125, 127, 133 & 134.)  Thereafter, Plaintiff moved to amend the Amended Complaint on June 3, 2015.  (ECF No. 137.)

### III.     LEGAL STANDARD

A.     The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court reviews de novo only those portions of a Magistrate Judge's recommendation to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

B.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the

disposition of the case under the applicable law.  <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. <u>Newport News Holdings Corp. v. Virtual City Vision</u>, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  <u>Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986); <u>Shealy v. Winston</u>, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  <u>Anderson</u>, 477 U.S. at 249.

## IV.    ANALYSIS

A.    <u>The Report</u>

In the Report, the Magistrate Judge first addressed the issue of whether the court should grant DTC Defendants' Motion to Dismiss for insufficient service of process.  (ECF No. 142 at 4–8.)  Upon her review, the Magistrate Judge observed that Plaintiffs "provide no indication that they attempted service on these [DTC D]efendants, or that any service attempt was frustrated by external factors."  (<u>Id.</u>)  The Magistrate Judge further observed that Plaintiffs "have not requested an extension for the time limit for service, or otherwise responded to . . . [DTC D]efendants' contention . . . that service has not been properly effected."  (<u>Id.</u>)  Moreover, the Magistrate Judge opined that Plaintiffs were now "erroneously claim[ing] that information directed to . . . [DTC D]efendants in the court's order authorizing the issuance of summonses . . . for service,

somehow 'invoked personal jurisdiction' and relieved . . . [Plaintiffs] of their responsibility to serve . . . [DTC D]efendants with process." (Id. (referencing ECF No. 126 at 21).) Based on the foregoing, the Magistrate Judge concluded that DTC Defendants were entitled to dismissal of the Amended Complaint for insufficient service of process. (Id. at 8 (referencing Fed. R. Civ. P. 12(b)(5)).)

The Magistrate Judge next addressed Plaintiffs' Motion to Amend the Amended Complaint (ECF No. 137) to add claims against Boyd-Scotland and DTC for alleged violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17. (ECF No. 142 at 8–9.) In considering the merits of Plaintiffs' Motion, the Magistrate Judge observed that (1) ADA and Title VII claims are incognizable against Boyd-Scotland, an individual; (2) DTC as a governmental unit of the State of South Carolina is immune from the ADA claim pursuant to Eleventh Amendment immunity; and (3) DTC has "not been served with process and . . . [Plaintiffs] have not established good cause to permit extension of the service deadline." (Id. at 9.) As a result, the Magistrate Judge recommended that the court deny Plaintiffs' Motion to Amend because the amendment was futile. (Id. at 10.)

The Magistrate Judge also recommended granting summary judgment to James on § 1983 causes of action alleged against him by Plaintiffs for unreasonable search, unlawful seizure, and false imprisonment. The Magistrate Judge observed that Plaintiffs' evidence does not establish "that Defendant James subjected . . . [Plaintiffs] to any type of seizure or unlawful search in violation of the Fourth Amendment" or "that Defendant James violated the Aroras' right to due process and equal protection under the Fourteenth Amendment . . . ." (Id. at 13.) The Magistrate Judge further observed that there was not any evidence in the record to demonstrate that James intentionally and unlawfully restrained Plaintiffs in any way. (Id. at 16.)

Finally, as to Plaintiffs' § 1983 claims against RMC, the Magistrate Judge observed that Plaintiffs were unable to "identify a municipal policy or custom that caused . . . [their] injury" and there is not any evidence in the record "of the existence of any such policy or custom."  (Id. at 14–15 (citing, e.g., Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) ("[M]unicipal liability under § 1983 . . . arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'") (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978))).)  Moreover, the Magistrate Judge concluded that the evidence in the record demonstrates that "Wallace and Williams entered the hospital during open visitation hours and . . . [their] presence . . . in the hospital was immediately reported to security and addressed by Defendant James."  (Id. at 15 (referencing ECF Nos. 95-2 & 95-3).)  In light of the foregoing, the Magistrate Judge recommended that the court should grant James and RMC's Rule 56 Motion.  (ECF No. 142 at 15–16.)

B.    <u>Plaintiff's Objections</u>

In their first set of Objections devoted to the Report's findings regarding DTC Defendants, Plaintiffs initially objected to the Magistrate Judge's alleged failure to address the merits of DTC Defendants' Rule 56 Motion.  (ECF No. 144 at 4–5.)  In this regard, they asserted that if the court lacked jurisdiction over DTC Defendants, the Magistrate Judge should not have addressed any of the pending Motions.  (Id. at 5.)  Moreover, as it pertains to jurisdiction, Plaintiffs asserted that the court had jurisdiction over DTC Defendants based on their counsel entering an appearance on their behalf.  (Id. at 5–8.)  Plaintiffs further asserted that they were denied their rights protected by the Due Process Clause based on the lack of clarity in the Report regarding when their Objections were due to be filed.  (Id. at 9.)  Plaintiffs also asserted that DTC Defendants' Rule 56 Motion was not filed within the time parameters authorized by Fed. R. Civ. P. 56(b) and was therefore void.  (Id. at 11.)

In addition to the foregoing, Plaintiffs identified the following 17 additional alleged errors in the Report that they claim resulted in the deprivation of their due process rights[13]:

Objection 1: (ECF No. 142 at 2:20–21) Not applicable if Notice of Appearance is filed by the Counsel, then Counsel can't raise this MOOT issue.

Objection 2: (Id. at 2:21–3:2) Notice of Appearance filed by the Counsel invokes personal jurisdiction on defendants.

Objection 3: (Id. at 4:6–7) R&R does not indicate where to look for this Motion. Plaintiff can't find it. This is a denial of due process right.

Objection 4: (Id. at 4:8–9) R&R does not indicate where to look for this. The defendants have not filed any paper. Only Counsel Fox filed papers on behalf of defendants. This is denial of due process of right. Counsel can't raise this issue after Counsel filed a Notice of Appearance.

Objection 5: (Id. at 4:10–6:11) None of the cited case laws or Federal Rules of Civil Procedure is applicable here as the Court invoked personal jurisdiction on DTC et al. on January 13, 2014 by virtue of Counsel Arthur III filing a Notice for Appearance.

Objection 6: (Id. at 6:11–17) March 6, 2014 ORDER was defective and was a violation of Due Process as the ORDER did not indicate if all the defendants were to serve or only the defendants who had filed a Motion to Dismiss. Plaintiffs were under the impression that the defendants who filed a Motion to Dismiss/Strike on January 27, 2014 (ECF 13 and 14) should only be served and not anyone else as per ORDER.

Objection 7: (Id. at 6:17–7:1) After filing a Notice of Appearance on January 13, 2014 and again on January 31, 2014, and suggesting that DTC et al. defendants had been deemed personally served pursuant to SCRCP 4(d), Supra, Counsel Fox asserted these frivolous and MOOT defenses to mislead the Court. Now it shows that, Counsel Fox has intentionally and successfully misled the Court.

Objection 8: (Id. at 8:1–4) After filing a Notice of Appearance on January 13, 2014 and again on January 31, 2014, and suggesting that DTC et al. defendants had been deemed personally served pursuant to SCRCP 4(d), Supra, Counsel Fox asserted these frivolous and MOOT defenses to mislead the Court. Now it shows that, Counsel Fox has intentionally and successfully misled the Court.

Objection 9: (Id. at 7:5–9) Plaintiffs read from March 6, 2014 ORDER, "TO DEFENDANTS: Multiple defendants have already responded to the Complaint; accordingly, the defendants are hereby instructed that

---

[13] Each Objection is stated verbatim from Plaintiffs' filings and is specified with the corresponding page(s)/line(s) of the Report to which the Objection applies.

they may file amended answers and/or otherwise plead, if they so desire, in light of the claims listed above." (Page 2 of the ORDER) Plaintiffs construed that DTC et al. defendants had choice to file amended answer after ROSEBORO ORDER, if they so desire, DTC et al. defendants did not have to file as they had already appeared through Counsel Fox filing Notice of Appearance.   Now, it is established through R&R that plaintiffs were denied due process as March 6, 2014 ORDER was not clear to them.

Objection 10: (Id. at 7:10–15) Now, it appears to plaintiffs that R&R suggests that a Notice of Appearance filed by Counsel Fox and subsequently filing several Motions did not indicate to the Court that the Court invoked personal jurisdiction on DTC et al. defendants on January 13, 2014.  This is of course contrary to the spirit of Ins. Co. of Ireland, supra Court and Haver, supra Court of 4th Circuit.

Objection 11: (ECF No. 142 at 7:15–19) Plaintiffs still believe that March 6, 2014 ORDER suggests that the Court had invoked personal jurisdiction on DTC et al. defendants.  If the Court thinks Aroras' belief is incorrect, then it is a denial of due process as March 6, 2014 ORDER was not clear to them.

Objection 12: (Id. at 7:20–8:5) Plaintiff was afraid of sanction to file a frivolous motion requesting extension of time since Counsel Fox filed a Notice of Appearance to represent DTC etc. on January 31, 2014 and aggressively defending the complaint/claims.    Requesting for extension of time to serve would have been contrary to the spirit of Ins. Co. of Ireland, supra Court and Haver, supra Court of 4th Circuit.

Objection 13: (ECF No. 142 at 8:7–18) NONE.

Objection 14: (Id. at 8:19–9:8) Again, it appears to plaintiffs that R&R suggests that a Notice of Appearance filed by Counsel Fox and subsequently filing several Motions did not indicate to the Court that the Court invoked personal jurisdiction on DTC et al. defendants on January 13, 2014.  This is of course contrary to the spirit of Ins. Co. of Ireland, supra Court and Haver, supra Court of 4th Circuit.

Objection 15: (ECF No. 142 at 9:9–12) Typically, it is defendants who raise this type of issues through Rule 12(b)(6) of Fed. R. Civ. P.  Here, in R&R, it is raised by Hon. Gossett, sua sponte, without any authority in violation of plaintiffs' due process rights.

42 U.S.C. 2000e-(b) states in pertinent part, "The term "employer" means a [governmental agency such as DTC defendant] engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . ." (Emphasis added)

Agent in the statutory language of section 2000e-2(b) includes Supervisor such as Defendants Boyd-Scotland and Lavania. Therefore, both of them are liable for the injury and damages suffered under Title VII claims.  The Supreme Court also made it clear in <u>Meritor Savings Bank, FSB v. Vinson</u>,  477 U.S. 57 (1986).  The court held, "The court relied chiefly on Title VII's definition of "employer" to include "any agent of such a person," 42 U.S.C. § 2000e(b), as well as on the EEOC Guidelines.  The court held that a supervisor is an "agent" of his employer for Title VII purposes, even if he lacks authority to hire, fire, or promote, since "the mere existence – or even the appearance – of a significant degree of influence in vital job decisions gives any supervisor the opportunity to impose on employees."" (Citation omitted) <u>Id.</u> at 73[.]  The cases cited in R&R made no reference to the word "agent."  Therefore, it is prejudicial error that individual defendants are not liable under Title VII claim and ADA claim.

Objection 16:  (ECF No. 142 at 9:13–10:2) Typically, it is defendants who raise this type of issues through Rule 12(b)(6) of Fed. R. Civ. P.  Here, in R&R, it is raised by Hon. Gossett, sua sponte, without any authority in violation of plaintiffs' due process rights.  Contrary to what R&R stated, the Congress' intention is very clear that there is no immunity under 11th Amendment to defendant such as DTC, a State of South Carolina agency.  See 42 U.S.C. § 12202.

Objection 17:  (ECF No. 142 at 10 n.5) Typically, it is defendants who raise this type of issues through Rule 12(b)(6) of Fed. R. Civ. P.  Here, in R&R, it is raised by Hon. Gossett, sua sponte, without any authority in violation of plaintiffs' due process rights.  This gives an indication that Hon. Gossett is on the side of defendants.

Right-to-sue letter was issued on March 10, 2015 by EEOC.  Motion to Amend was filed on June 3, 2015.  Total number of days between the date the letter was issues and the Motion was filed = 21 remaining days in March + 30 days in April + 31 days in May + 3 days in June = 21+30+31+3 = 85 days.  However, if we count numbers of days from March 14, 2015, then total number of days up to June 3, 2015 are 81 days only.  The footnote of R&R says that the statutory period of 90 days expired.  Due Process requires explaining the detailed calculations in R&R as to how Hon. Gossett came up with the conclusion that 90 days are expired.  In R&R the calculations are incorrect.

(ECF No. 144 at 12–17.)

In their second set of Objections (ECF No. 145), Plaintiffs argued that their Fourth Amendment rights were violated by Wallace, Williams, and James and they are liable for

damages under 42 U.S.C. § 1983.  (Id. at 9–11.)    Moreover, Plaintiffs submitted the following

objections to the Magistrate Judge's findings as to the liability of James and RMC under § 1983.

Objections 1:  (ECF No. 142 at 14:14–15) Defendant James liability for § 1983 falls under the doctrine of conspiring with the defendants Wallace and Williams acting under the Color of State Law.  Whereas, municipality liability falls where the constitutionally offensive acts of municipal employees are taken in furtherance of some municipal 'policy or custom.'  Therefore, legal theories for § 1983 are distinct for Defendant James, and Defendant TRMC Hospital.

Objections 2:  (ECF No. 142 at 14:15–17) Aroras did not raise respondeat superior doctrine for liability for TRMC Hospital, so it is a MOOT issue.  The Court should disregard this.

Objections 3:  (Id. at 14:17–20) This is a violation of due process.  In R&R, the Court should discuss only Summary Judgment and not things related to Motion to Dismiss under Rule 12(b)(6).

In any event, "Federal Rules of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement needs only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (Internal quotation marks are omitted).  "[A] claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice."  (Citation Omitted) Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165 (1993)

So specific TRMC Hospital policy or custom is not required at the pleading stage.

Objections 4:  (ECF No. 142 at 14:21–15:1) Was the document effective on January 4, 2012? Aroras have no idea.  No one had testified under oath that the document was in effect on January 4, 2012.  No one has testified the authenticity of the document either.  So, Arora objects admitting this into evidence.  See Rule 901 – Fed. R. Evid.

Objections 5:  (ECF No. 142 at 15:1–3) Aroras cannot locate this at page 7 and 9.  This is a denial of due process.

Objections 6:  (Id. at 15:3–5) The criminal activity was reported to Captain James, yet it was not addressed properly.

Objections 7:  (Id. at 15:5–7) Aroras have no knowledge about this.

Objections 8:  (Id. at 15:7–9) Assuming arguendo, the Medical Center Visitation Policy (ECF No. 95-3 at page 10) is true and correct copy.  Aroras have located item #3 on this page which reads in pertinent part: "3.

RMS will accept verbal confirmation from a patient of individuals who should be admitted as visitors of the patients and individuals who should be denied the visitation rights." There does not exist any proof that Arora consented to permit anyone to visit him in the TRMC Hospital. Counsel Jett had not provided this to the Court as part of the Summary Judgment. So, Court does not have the proof.

Defendant James had been trained to observe and enforce the unwritten "Official Policy" of allowing anyone including criminals/trespassers/invaders on TRMC Hospital unless patient objects to it. See, e.g., Pembaur, supra, at page 180. The "Official Policy" requires the patient to be alert and be prepared ahead of time that he/she could be subject to crime on TRMC Hospital. TRMC Hospital does not intervene and stop it. TRMC Hospital condones the crime and they would cover up the crime by not reporting to local law enforcement agency by giving evasive response. See false declaration of defendant James, "I called the [local] Sheriff's Office, but was told by dispatch that the patient must take the matter up with City of Denmark, not the Sheriff's Office."

Objections 9:  (ECF No. 142 at 15:9–12) No one stopped them from entering in TRMC Campus. There was never been a security guard at the entrance. Any criminal could walk in and create chaos. It was so happened that Wallace and Williams had firearm and were in uniform. That was the only reason why it caught the attention of the security. Even though Defendant did not handle the situation which was legally correct, however, it appears to Aroras that they followed the "Official Policy."

Objections 10: (Id. at 15:13–18) No objections

Objections 11: (Id. at 15:18–20) TRMC HOSPITAL Policy or Custom: In the previous item stated aforementioned, Hon. Gossett reiterated the policy/custom as stated by Aroras in the Response to Summary Judgment.  In one sentence, Hon. Gossett reiterated the Policy/custom and in this item, Hon. Gossett is saying that Aroras had not identified the policy/custom.

Aroras are not clear about this conclusion drawn by Hon. Gossett. This is a denial of due process. In fact, defendant James also had stated the same policy/custom in his affidavit. Defendant James states in his declaration, "I have found no documentation of any request of Mr. Arora to restrict visitors prior to this incident. Thus, under the visitation policy, he could have visitors without restrictions. These visitors, however, were unwelcome by him, and their presence apparently disturbed him, so they were requested by me to leave." (ECF 95-3, page 2, last 4 lines)

However, the written TRMC policy/custom is different then what defendant James stated. The specific TRMC policy/custom is, "3. RMS will accept verbal confirmation from a patient of individuals

who should be admitted as visitors of the patients and individuals who should be denied the visitation rights." (ECF 95-3, page 10). TRMC must obtain consent from the patient to allow anyone who the patient designated as visitors, Plaintiff NCA never gave any consent for any visitor at all. So, defendant James had been told to reinforce an "official policy" as opposed to the written policy/custom.

Also TRMC "official policy" is to disclose the exact whereabouts (room number) of any patient, such as NCA, to anyone. In this case, of course to Wallace and Williams, who must have learnt the room number 2325, where patient NCA was staying. They must had enquired over the phone before they came to TRMC Hospital. This is also another "official policy" of TRMC to wrongfully disclose the health information of the patient. Although it is also Contrary to HIPPA privacy rule (42 U.S.C. § 1306 d-6), but no one cares in TRMC the violation of Criminal Federal LAW of HIPPA private rule.

So, TRMC Hospital "Official Policy" was to permit employee such as defendant James to permit to Wallace and Williams to come to patient NCA's room, without obtaining NCA's consent, and engaged in the constitutionally offensive acts (4th and 14th Amendment violations) described in NCA's and SU's affidavit/declaration. (ECF 124-1, page 2 and 3)

So, TRMC Hospital "Official Policy" was also to permit TRMC employee to disclose the health information of the patient Arora's room to Wallace and Williams, without obtaining NCA's consent, and engaged in the constitutionally offensive acts (4th and 14th Amendment violations) described in NCA's and SU's affidavit/declaration. (ECF 124-1, page 2 and 3)

The whole scenario is somewhat similar as described by U.S. Supreme Court in Pembaur, Supra, at page 480, which held, "[t]o be sure, "official policy" often refers to formal rules or understandings – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time."

As per Monell, supra Court, TRMC Hospital, County of Orangeburg and Calhoun government agency, is a person within the meaning of § 1983. Aroras have established all the essential elements of municipal liability under § 1983. Therefore, summary judgment for this claim should have been granted in favor of Aroras.

Objections 12: (ECF No. 142 at 15:20–16:2) "At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In the instant case, based

> upon the weight of the evidence, and determining the truth of matter, R&R suggests that Summary judgment should be granted to TRMC Hospital.  This is the function of the jury and not the function of the judge.

(ECF No. 145 at 5–9.)

Additionally, Plaintiffs stated the following regarding the alleged denial of discovery which they assert results in a "deprivation of due process":

> (ECF No. 142 at 17:2–7) Rule 56(d) states in pertinent part: WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT.  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.
>
> In the instant case, on October 22, 2014, Aroras filed a Motion for a Stay of the proceedings including DISCOVERY outlined in the SCHEDULING ORDER for few Good Causes.  The DISCOVERY cut-off date was January 21, 2015.  The Court did not rule on this Motion for a Stay until March 24, 2015.  The ruling on the motion was much past the cut-off date of the discovery.  Further, the Court denied the Motion.  Essentially, Aroras could not do any discovery.
>
> Again, to oppose Summary Judgment, on April 17, 2015, Aroras requested to allow DISCOVERY.  Instead of allowing DISCOVERY pursuant to Rule 56(d), now the R&R is saying that the DISCOVERY is moot.  Technically, it should have been other way around.
>
> This ruling is nothing more than a deprivation of due process.  The Rules of litigation in Federal Rules of Civil Procedure permits DISCOVERY before Summary Judgment.  Obviously, if Aroras are not allowed to do the DISCOVERY as mandated by due process, it is almost certain that Aroras cannot oppose Summary Judgment properly and successfully.
>
> In KEVIN THOMAS AND JOYCE BAKER V. ANCHORAGE EQUAL RIGHTS COMMISSION, 220 F.3d 1134 (2000), 9th Circuit made it very clear about Clause 1 of Section 2 of Article III, ripeness issue:  "This case presents a threshold question of ripeness.  The Supreme Court instructs that ripeness is "peculiarly a question of timing," Regional Rail Reorg. Act Cases, 419 U.S. 102, 140, 95 S. Ct. 335, 42 L. Ed. 2d 320 (1974), designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  (Citations omitted).
>
> So, in light of Article III ripeness issue and pursuant to due process, R&R on the Summary Judgment should be regarded as MOOT, since DISCOVERY is

pending. R&R on Summary Judgment is not ripe yet in light of Clause 1 of Section 2 of Article III, ripeness issue.

(ECF No. 145 at 11–12.)

Plaintiffs also objected to the factual summary included in the Report:

(ECF No. 142 at 11:12–13:14) The 3 pages description of the facts taken from the declaration/affidavits of Captain James and Aroras, Hon. Gossett weights the evidence and tried the issues of facts and suggests that the decision Hon. Gossett is taking exactly same what the jury would have taken in a jury trial instead of bench trial. Essentially, Hon. Gossett has turned the summary judgment proceedings into bench trial. This is a denial of due process of law. First of all, Aroras requested jury trial and not a bench trial. Secondly, the date for a bench trial/jury trial has not been announced yet.

(ECF No. 145 at 12.)

Plaintiffs last set of objections focused on the Report as it relates to their claim for false

imprisonment:

Objections 1: (ECF No. 142 at 16:4–6) The Aroras allege a state law claim of false imprisonment against 3 Defendants James, Wallace and Williams.

Objections 2: (Id. at 16:7–11) Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." . . . Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright & Miller 299." Hon. Gossett's is weighting the evidence to justify granting of summary judgment, which is contrary to U.S. Supreme Court.

It is very obvious; if weighing of the evidence function belongs to the jury, so let jury decide. The Court should not decide this hypothetical issue to justify granting summary judgment for James. R&R totally ignored the ruling of Summary judgment for or against Wallace and Williams.

Objections 3: (ECF No. 142 at 16:12–14) This is denial of due process as Hon. Gossett is now going back and ruling on the Amended Complaint. Aroras were under the impression that this R&R is about Summary Judgment papers filed by Counsel Jett.

Due process requires identifying the specific claims Hon. Gossett is mentioning. Aroras can't object properly if they don't know what to object.

(ECF No. 145 at 13–14.)

In addition to their Objections, Plaintiff filed a document titled Plaintiffs' Notice of Constitutional Challenge to Statutes (ECF No. 148). In this document, Plaintiffs sought to challenge the constitutionality of several federal statutes. (Id. at 1.) In this regard, Plaintiffs argued that the Magistrate Judge erroneously denied their attempt to assert Title VII and ADA claims against Boyd-Scotland because Boyd-Scotland was an agent of DTC and an agent of an employer can be liable for their violations. (Id. at 2–4 (citing, e.g., 42 U.S.C. § 2000e(b)).) Plaintiffs questioned the constitutionality of 28 U.S.C. § 636 asserting that it facilitates confusion by (1) creating simultaneous jurisdiction between a magistrate judge and the district judge, (2) permitting the Magistrate Judge to issue a ruling (ECF No. 62) on their first Motion to Amend the Complaint, but only issue the Report (ECF No. 142) as to the Motion to Amend the Amended Complaint; (3) allowing simultaneous jurisdiction between the magistrate judge and the district judge that in this case has caused a) the Magistrate Judge to  issue a Report and Recommendation while Plaintiffs were still awaiting a ruling on objections to a prior Report and Recommendation and b) the Magistrate Judge and District Judge to resolve discovery disputes on different grounds; (4) permitting the Magistrate Judge to issue "hypothetical jurisdiction[al]" rulings when § 636 does not require such determination of "the [c]ourt's own jurisdiction within Article III"; (5) allowing the Magistrate Judge to change summary judgment proceedings to a bench trial in which Defendants were declared the prevailing party; (6) allowing the Magistrate Judge to change DTC Defendants' Motion for Summary Judgment to a Motion to Dismiss; and (7) failing to establish deadlines for magistrate judges and district judges to issue rulings on pending motions. (ECF No. 148 at 4–13.) Plaintiffs also questioned how the Magistrate Judge could rely on unpublished opinions to recommend denial of their ADA claim when 42 U.S.C. § 12202 minimally allows for equitable relief against a state agency. (Id. at 5–6.) Finally,

Plaintiffs asserted that the Report is clearly erroneous and contrary to law and they do not understand why the Magistrate Judge's rulings have not been reconsidered.  (Id. at 12.)

Based on the foregoing, Plaintiffs requested that the court either grant judgment in their favor or issue an order for discovery to allow them to properly oppose the pending Motions for Summary Judgment.  (ECF Nos. 144 at 17 & 145 at 14.)  Plaintiffs further requested that their constitutional issues be certified for review by the United States Supreme Court.  (ECF No. 148 at 13.)

C.     The Court's Review

As noted above, Plaintiffs offer numerous objections, with accompanying citations, to the Magistrate Judge's findings.  However, for the reasons stated below, none of these objections are sustainable and therefore the court declines to address them ad seriatim.

1.   *James and RMC's Rule 56 Motion*

In their Rule 56 Motion, James and RMC assert that they are entitled to summary judgment on the claims stated against them in the Amended Complaint for deprivation of civil rights regarding an unreasonable search (Count 4), intentional infliction of emotional distress[14] (Count 6), and false imprisonment (Count 7).  (ECF No. 95-1 at 3–8.)  Moreover, James and RMC assert that they are immune from suit pursuant to qualified immunity.  (Id. at 9–10.)

Upon review, the court agrees with the Magistrate Judge that all of Plaintiffs' causes of action against James and RMC possess a fatal defect.

**a.  Constitutionally Unreasonable Search**

Plaintiffs contend that their Fourth Amendment right to be free from any unlawful search was violated by James.  James states that he "did not engage in any search of . . . [Plaintiffs']

---

[14] The court notes that it dismissed with prejudice Plaintiffs' claim against James and RMC for intentional infliction of emotional distress on March 6, 2015.  (See ECF No. 112.)

room nor in any search of any person." (ECF No. 95-3 at 3.) James further states that he did not

condone or participate in any conduct by Wallace or Williams. (Id.)

The court observes that in Plaintiffs' description of the facts surrounding their Fourth

Amendment, James is not identified as having engaged in an unconstitutional seizure:

> Wallace and Will[iams] were trespassers and intruders on the private property of
> the Hospital room # 2325, which was leased by NCA during his stay for the
> treatment. It was a criminal activity to step into TRMC premises with loaded gun.
> It was definitely a criminal activity to step into patient NCA's private room with a
> loaded gun. Officers walked into the Hospital and then went to NCA's private
> bed without the Hospital's permission and without the consent of plaintiffs.
> Captain James[] objected [to] their presence . . . . Captain James repeatedly asked
> them to leave, however, he also felt short of his job responsibility. Either, Captain
> James should have arrested them or immediately called the local sheriff. Captain
> James did not do either. He effectively condoned their criminal activity.
>
> Both Officers . . . were engaging in trespassing private property and they engage
> in search and seizure without warrant in Violation of 4th Amendment. The
> Officers also imposed imprisonment directed at NCA and SU during their stay in
> the room, again in violation of 4th Amendment.

(ECF No. 124 at 16–17.)

To demonstrate a valid Fourth Amendment claim for an unreasonable search, a plaintiff

must show that (1) a state actor plausibly infringed on "an expectation of privacy that society is

prepared to consider reasonable"; (2) the alleged search conducted was unreasonable; and (3) a

causal connection existed between the defendant's actions and the constitutional deprivation.

O'Connor v. Ortega, 480 U.S. 709, 715–19 (1987) (citations omitted). Upon review, the court

agrees with the Magistrate Judge that Plaintiffs' evidence does not demonstrate that "James

subjected . . . [Plaintiffs] to any type of seizure or unlawful search in violation of the Fourth

Amendment . . . [or their] right to due process and equal protection under the Fourteenth

Amendment . . . ." (ECF No. 142 at 13.) Accordingly, James is entitled to summary judgment

on Plaintiffs' claims for an unreasonable search.[15]

In addition, Plaintiffs have failed to produce any evidence to show how their constitutional rights were violated by RMC pursuant to its policy or custom. RMC asserts that it is a governmental entity. (ECF No. 95-1 at 7.) A government entity can be held liable under § 1983 for implementing an official policy, practice or custom "'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 910 (3d Cir. 1984) (quoting Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978)). "A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch, 736 F.2d at 910.

In the Report, the Magistrate Judge concluded that Plaintiffs failed to identify any such policy or custom of RMC that inflicted injury on Plaintiffs. (ECF No. 142 at 15[16]) Specifically, the Magistrate Judge found no evidence to support Plaintiffs' assertion that RMC has a "custom or policy of allowing trespasser, intruders, criminals (Not Guests) on the TRMC premises" and in private rooms and a policy allowing "anyone to come to the premises with gun and with criminal inten[t]." (Id. (quoting ECF No. 124 at 6 & 11).) Notwithstanding Plaintiffs' statements in their Objections regarding RMC's "official policy," the court agrees with the

---

[15] Since James did not violate Plaintiffs' constitutional rights, he is also presumed to be entitled to qualified immunity. Public officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Specifically, qualified immunity for a public official is appropriate when no constitutional right has been violated. Saucier v. Katz, 533 U.S. 194, 201 (2001).

[16] The Magistrate Judge did note the existence of RMC's Visitation Policy and Medical Center Security Management Plan, which policy addresses RMC's hours of visitation and provides patients with the ability to withdraw or deny consent to visitation at any time. (ECF No. 95-3 at 7–13.) There is no evidence before the court that Plaintiffs had requested any visitation restriction prior to the incident involving Wallace and Williams.

Magistrate Judge that Plaintiffs' conclusory allegations do not establish the existence of a policy or custom of RMC that inflicted injury on Plaintiffs. Accordingly, RMC is entitled to summary judgment on Plaintiffs' claim for a constitutionally unreasonable search.

### b. False Imprisonment

To establish their claim against James for false imprisonment, Plaintiffs have to demonstrate that James intentionally restrained them unlawfully. <u>Law v. S.C. Dep't of Corr.</u>, 629 S.E.2d 642, 651 (S.C. 2006) ("To prevail on a claim for false imprisonment, the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful.") (citations omitted). In the Report, the Magistrate Judge concluded that Plaintiffs "forecast no evidence to demonstrate that Defendant James in any way restrained . . . [Plaintiffs]." (ECF No. 142 at 16.) In their Objections, Plaintiffs argue that the Magistrate Judge had engaged in the unauthorized weighing of evidence and violated Plaintiffs' due process rights. (ECF No. 145 at 13–14.)

Similar to their unreasonable search claim, Plaintiffs' description of the facts surrounding their false imprisonment claim does not identify James as having engaged in the illegal restraint of Plaintiffs:

> All these defendants Captain James, TRMC, Wallace, and Will[iams], acted under color of Law including custom and usage of the State of South Carolina in allowing Defendants Wallace and Will[iams] to carry out unauthorized search attempted seizure of NCA's property and created an environment of false imprisonment to NCA and Su in violation of 4th and 14th Amendments on January 4, 2014.

(ECF No. 124 at 7.)

> The defendants Wallace and Will[iams] restrained NCA and SU in a private Hospital bedroom. Both of them did it intentionally so that no one could escape from their control and their restra[i]n[t] was unlawful as they did not have any warrant, no probable cause, and no power to trespass[]. They had no business to be there. They were not plaintiffs' guest; rather they were trespassers and intruders, and engaged in a criminal activity. In addition, Captain James and TRMC Hospital condone their criminal activities and even today Captain James

21

and TRMC refused to file a charge to the local sheriff Department.  In fact they also collaborated with Wallace and Will[iams].

(Id. at 18.)  As a result, the court agrees with the Magistrate Judge that there is no evidence in the record that James restrained Plaintiffs.  Therefore, the court grants summary judgment to James on Plaintiffs' claim for false imprisonment.

### 2. DTC Defendants' Motion

DTC Defendants argue that "they are entitled to dismissal of Plaintiffs' Amended Complaint pursuant to Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure" because "no proofs of service of the complaints or any other conceivable supporting affidavits have been entered by . . . Plaintiffs evidencing any compliance with Rule 4 as to the . . . [DTC] Defendants."  (ECF No. 103-1 at 4.)

Fed. R. Civ. P. 4(m) requires that, absent a showing of good cause, the court must dismiss without prejudice any complaint in which the plaintiff fails to serve the defendant within an allotted period of 120 days.[17]  Id.  Courts within the Fourth Circuit have found good cause to extend the 120–day time period when the plaintiff has made "'reasonable, diligent efforts to effect service on the defendant.'"  Venable v. Dep't of Corr., C/A No. 3:05cv821, 2007 WL 5145334, at *1 (E.D. Va. Feb. 7, 2007) (quoting Hammad v. Tate Access Floors, Inc., 31 F. Supp. 2d 524, 528 (D. Md. 1999)).  "Inadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service" generally are insufficient to show good cause.  Id. (quoting Vincent v. Reynolds Mem'l Hosp., 141 F.R.D. 436, 437 (N.D. W. Va. 1992)).

---

[17] Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).  "But if the plaintiff shows good cause for the failure [to serve the defendant], the court must extend the time for service for an appropriate period."  Id.

In this case, because Plaintiffs filed the Amended Complaint on September 23, 2014, they should have served DTC Defendants on or before January 21, 2015.  The Magistrate Judge observed that Plaintiff's failure to serve DTC Defendants occurred after Plaintiffs were warned that they "are responsible for service of process under Rule 4 of the Federal Rules of Civil Procedure."  (ECF No. 142 at 7 (referencing ECF No. 33 at 2).)  The Magistrate Judge concluded that Plaintiffs did not provide any indication that they attempted to serve DTC Defendants in accordance with the manner prescribed under either the Federal Rules of Civil Procedure or South Carolina Rules of Civil Procedure.  (Id.)  The Magistrate Judge further concluded that Plaintiffs did not make any showing of good cause to excuse their failure to serve DTC Defendants.  (Id. at 7–8.)

Upon review, because Plaintiffs' opposition to the Report is based on their erroneous belief that personal jurisdiction exists over DTC Defendants based on the entry of appearance of DTC Defendants' counsel (see, e.g., ECF No. 144 at 12[18]), the court agrees with the Magistrate Judge that DTC Defendants are entitled to dismissal for insufficient service of process under Fed. R. Civ. P. 12(b)(5).  (See id. at 8.)  Accordingly, the court dismisses without prejudice the claims in the Amended Complaint against DTC Defendants.

    *3. NCA's Motions for Discovery and Plaintiffs' Motion to Amend the Amended Complaint*

In his Motions for Discovery (ECF Nos. 125 & 127), NCA asserts that good cause exists to allow him to conduct discovery after the January 21, 2015 deadline.  However, even if good cause was present, the court in its discretion would still deny the Motions for Discovery because

---

[18] "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998).  The plaintiff bears the burden of proving proper service.  See McEachern v. Gray, C/A No. 4:14-cv-1234-BHH , 2015 WL 5089613, at *10 (D.S.C. Aug. 27, 2105) (citing Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 773 (E.D.N.C. 2011); O'Meara v. Waters, 464 F. Supp. 2d 474, 476 (D. Md. 2006)).

NCA has failed to persuade that the reasons for his failure to conduct discovery warrant extending that deadline.[19]  Therefore, the court denies NCA's Motions for Discovery.

In their Motion to Amend the Amended Complaint (ECF No. 137), Plaintiffs seek to add claims against Boyd-Scotland and DTC for alleged violations of the ADA and Title VII.  (See ECF No. 137-1 at 10 ¶ 66–11 ¶ 72 & 18 ¶ 107–20 ¶ 124.)  Because Boyd-Scotland and DTC have been dismissed from the matter for insufficient service of process, the court denies Plaintiffs' Motion to Amend to add claims against them as moot.

## V.    CONCLUSION

For the foregoing reasons, the court **GRANTS** the Motion for Summary Judgment of Defendants Captain James and the Regional Medical Center of Orangeburg.  (ECF No. 95.)  The court further **DISMISSES WITHOUT PREJUDICE** the Amended Complaint as to Defendants Denmark Technical College, an agency of the State of South Carolina, a governmental entity; Chief Wilbur Wallace; Donald Williams; Joann Boyd-Scotland; Ambrish Lavania, individually (at their personal capacity) and as agents and employees for Denmark Technical College; and Does 1-100.  (ECF No. 103.)  The court **DENIES** Naresh C. Arora's Motions for Discovery (ECF No. 125 & 127) and **DENIES AS MOOT** Plaintiffs' Motion to Amend the Amended

---

[19] "While the court agrees that it can enlarge time contained in a Pretrial Order for good cause as provided by Rule 16, [it appears that] the more specific requirements of Rule 6(b)(1)(B) apply where, as here, a deadline has already run." Johnson v. Murphy ex rel. Munoz, 2011 WL 3099874, at *4 n.3 (D.S.C. July 22, 2011) (quoting Anderson v. Caldwell Cnty. Sheriff's Office, No. 1:09cv423, 2011 WL 198085, at *1 (W.D.N.C. Jan. 20, 2011)); see Colony Apartments v. Abacus Project Mgmt., Inc., 197 F. App'x 217, 223 (4th Cir. 2006). Fed. R. Civ. P. 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Id.  In determining whether a party has shown excusable neglect, a court will consider: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. Colony, 197 F. App'x at 223 (citing Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996)).  "Merely establishing these elements does not entitle a party to relief; rather, 'whether to grant an enlargement of time still remains committed to the discretion of the district court.'" Id.

Complaint (ECF No. 137).   The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 142) and incorporates it herein by reference.

**IT IS SO ORDERED.**

United States District Judge

September 24, 2015
Columbia, South Carolina