# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Naresh C. Arora and Sudha Arora, ) | Civil Action No.: 5:14-cv-00018-JMC |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| Captain James; Regional Medical Center of ) | |
| Orangeburg; Denmark Technical College, ) | |
| an agency of State of South Carolina, a ) | |
| governmental entity; Chief Wilbur Wallace; ) | **ORDER AND OPINION** |
| Donald Williams; Joann Boyd-Scotland; ) | |
| Ambrish Lavania, individually (at their ) | |
| personal capacity) and as agents and ) | |
| employees for Denmark Technical College; ) | |
| Does 1-100, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Naresh C. Arora brings this action pro se against Defendant Regional Medical Center of Orangeburg[1] ("RMC") alleging a claim for negligence. (ECF No. 65 at 11 ¶ 66–12 ¶ 73.)

This matter is now before the court on RMC's unopposed Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claim for negligence. (ECF No. 188.) For the reasons set forth below, the court **GRANTS** RMC's Motion for Summary Judgment.

## I.  RELEVANT BACKGROUND TO THE PENDING MOTION

Denmark Technical College ("DTC") allegedly employed Arora as an instructor in the College's Electronics Technology Program from January 4, 2010 until January 4, 2012. (ECF

---

[1] The court observes that RMC has called itself "The Regional Medical Center of Orangeburg and Calhoun Counties" in its filings. (*See, e.g.*, ECF No. 188 at 1.) However, RMC has not expressly stated that it has been incorrectly identified by Plaintiffs in the caption.

1

No. 65 at 2 ¶¶ 3, 4.)

On December 31, 2011, Arora was admitted to RMC as a result of complications from a prior surgical procedure. (*Id.* at 4 ¶¶ 22–25.) On January 4, 2012, Arora communicated to his immediate supervisor, Dr. Ambrish Lavania, that he was in a private hospital room at RMC. (ECF No. 124-1 at 1 ¶ 5.) At around 7:30 p.m. on that same day, Chief Wilbur Wallace and Donald Williams of DTC's Police Department allegedly entered Arora's hospital room at RMC "without permission . . . [or] any warrant or court order." (*Id.* ¶ 9; *see also* ECF No. 65 at 5 ¶ 28.) Wallace and Williams presented Arora with an envelope containing a letter (ECF No. 124-1 at 2 ¶¶ 22–27), which document was signed by Joann Boyd-Scotland on behalf of DTC and notified Arora that his job at DTC was terminated. (ECF No. 65 at 5 ¶ 28.) Wallace and Williams also searched Arora's belongings, demanded that he return his office keys and all college-related books, and refused to allow him to use the restroom. (ECF No. 124-1 at 2 ¶¶ 10–29.) Arora further alleges that "Captain" Marion James, a security officer at RMC, observed Wallace and Williams' conduct while standing outside the hospital room and James did not take any action to stop Wallace and Williams alleged "criminal activity." (ECF No. 65 at 5 ¶ 32.)

Based on the foregoing events, Arora and his wife, Sudha Arora, (together "Plaintiffs") filed a pro se Complaint on January 2, 2014, alleging violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654; false imprisonment and deprivation of their civil rights under 42 U.S.C. §§ 1983 and 1988.[2] (ECF No. 1 at 6–13.) On July 30, 2014, Plaintiffs filed a Motion to Amend their Complaint. (ECF No. 48.) Substantively, in their proposed Amended Complaint, Plaintiffs sought to add a state-law claim labeled as a claim for medical malpractice against RMC. (*See* ECF No. 48-1 at 11 ¶ 66–12 ¶ 73.) On September 19,

---

[2] RMC was a named Defendant as to the civil rights claim. (ECF No. 1 at 8 ¶ 16–11 ¶ 26.)

2

2014, Magistrate Judge Paige J. Gossett entered an Order partially denying Plaintiffs' Motion to Amend to the extent it sought to add the new malpractice claim, concluding that such an amendment would be futile, because the Magistrate Judge determined under South Carolina law, a plaintiff asserting a medical malpractice claim is required to file an affidavit of an expert witness along with the proposed complaint. (ECF No. 62 at 3 (citing S.C. Code Ann. § 15-36-100(B) (2016); *Martasin v. Hilton Head Health Sys. L.P.*, 613 S.E.2d 795, 799 (S.C. Ct. App. 2005); *Jernigan v. King*, 440 S.E.2d 379, 381 (S.C. Ct. App. 1993))); *see also Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*) (explaining that, under Fed. R. Civ. P. 15(a), a motion to amend a complaint may be denied because, *inter alia*, the amendment would be futile). The Magistrate Judge granted the Motion to Amend in all other respects. (*See* ECF No. 62 at 3–4.) Subsequently, on September 23, 2014, Plaintiffs filed their Amended Complaint alleging violation of the FMLA, deprivation of civil rights regarding Arora's termination, medical malpractice,[3] deprivation of civil rights regarding an unreasonable search,[4] deprivation of civil rights in a conspiracy to interfere with equal protection rights, intentional infliction of emotional distress,[5] and false imprisonment. (ECF No. 65.)

In an October 6, 2014 filing, Plaintiffs timely objected to the Magistrate Judge's decision to partially deny their Motion to Amend as to the medical malpractice claim. (ECF No. 73 at 8–9.) In a subsequent Order, the court concluded that Plaintiffs' objections regarding the denial of their Motion to Amend were too generalized. (*See* ECF No. 112 at 7.) By a later Text Order, the

---

[3] Arora alleged this claim solely against RMC. (ECF No. 65 at 11 ¶ 66–12 ¶ 73.) The Magistrate Judge emphasized that the Motion to Amend was denied in part when, following the Magistrate Judge's initial denial, Plaintiffs nonetheless attempted to file the proposed Amended Complaint along with the new medical malpractice claim and RMC filed a Motion to Strike the Amended Complaint. (*See* ECF Nos. 65, 66, 70.)
[4] RMC was named as a Defendant in the civil rights claim. (ECF No. 65 at 12 ¶ 74–15 ¶ 85.)
[5] RMC was named as a Defendant in this state law claim. (ECF No. 65 at 18 ¶ 96–19 ¶ 104.)

court clarified that it expressly overruled Plaintiffs' objection to the Magistrate Judge's partial denial of their Motion to Amend as to the medical malpractice claim. (ECF No. 128.)

On February 20, 2015, James and RMC filed a Motion for Summary Judgment asserting that Plaintiffs' claims lacked merit and that James and RMC were immune from suit pursuant to qualified immunity. (ECF No. 95.) Plaintiffs filed opposition to James and RMC's Motion for Summary Judgment on April 17, 2015. (ECF No. 124.) On June 29, 2015, the Magistrate Judge issued a Report and Recommendation ("Report"), recommending that the court grant summary judgment to James and RMC. (ECF No. 142 at 10–16.) On September 24, 2015, over Plaintiffs' timely objections (*see* ECF Nos. 144, 145), the court accepted the Report and granted summary judgment to James and RMC on the then pending claims. (ECF No. 149 at 18–22.)

Plaintiffs timely appealed the court's ruling to the United States Court of Appeals for the Fourth Circuit on October 16, 2015. (ECF No. 152.) On appeal, the Fourth Circuit affirmed the court's decisions to grant summary judgment to James and RMC on Plaintiffs' claims against them. *See Arora v. James*, 689 F. App'x 190 (4th Cir. May 12, 2017) (per curiam). However, the Fourth Circuit vacated the court's order overruling Plaintiffs' objections to the Magistrate Judge's Order denying Plaintiffs' Motion to Amend the Complaint. *See id.* The Fourth Circuit concluded that, although Plaintiffs labeled the claim they sought to add as one for medical malpractice, the substance of their allegations "sound[ed] in ordinary negligence, not medical malpractice." *Id.* at 191. Because the proposed claim was for ordinary negligence, rather than medical malpractice, the Fourth Circuit concluded that South Carolina's requirement that the proposed amended complaint be accompanied by an expert witness' affidavit did not apply and that the amendment Plaintiffs sought was not futile. *See id.* (citing *Dawkins v. Union Hosp. Dist.*, 758 S.E.2d 501, 503-04 (S.C. 2014)). Accordingly, the Fourth Circuit "vacate[d] the . . .

4

court['s] order adopting the magistrate judge's ruling and remand[ed] for further proceedings." *Id.*

Thereafter, on April 12, 2018, the court exercised its discretion to "retain supplemental jurisdiction over Plaintiffs' state law negligence claim" and announced "a dispositive motion briefing schedule." (ECF No. 186 at 3.) On April 25, 2018, RMC filed the instant Motion for Summary Judgment. (ECF No. 188.)

## II. JURISDICTION

This court has jurisdiction over Arora's state law negligence claim based on supplemental jurisdiction since it is "so related to claims in the action within such original jurisdiction that . . . it form[s] part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Even though it granted summary judgment on the federal claim against RMC, the court has the authority to retain jurisdiction over the state law negligence claim that was closely related to the original federal claim. *Id.*

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-

24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV. ANALYSIS

A.  RMC's Arguments in Support of Summary Judgment

In its Motion, RMC argues it is entitled to summary judgment because there is no evidence in the record that it breached a duty under South Carolina law "not to allow intruders, trespassers, or harassment of its patient." (ECF No. 188-1 at 4.) In this regard, RMC asserts that it has in place a Visitation Policy and Security Management Plan (the "Policy") (*see* ECF No. 95-3 at 7–18) "to deter and respond to the unauthorized or unwelcome presence of persons, and to facilitate a patient's exclusion of visitors if the patient so cho[o]se[s]," (ECF No. 188-1 at 4.) Moreover, RMC asserts that Arora failed to utilize the Policy because he did not "withdraw consent for visitations," "ask that his visitations be restricted" or ask "that visitors not be informed of his presence nor his whereabouts in the hospital." (*Id.* at 4–5.)

In addition to the foregoing, RMC invokes the protections of the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 to -220 (2014) (the "Act"), and asserts that Plaintiffs' evidence fails to demonstrate the requisite gross negligence needed for them to recover damages under the Act. (ECF No. 188-1 at 7.) To this point, RMC contends that Plaintiffs needed to introduce expert testimony to establish "a duty or standard of care owed" and the Act precludes

Plaintiffs from seeking punitive damages, attorney and expert fees. (*Id.* at 7–8 (citing S.C. Code § 15-78-120[6]).)

B. The Court's Review

Arora alleged in his Amended Complaint that RMC was negligent when it breached a duty "not to allow intruders, not to allow any trespassing, and not to allow harassment or life threatening atmosphere to [][Arora] by a stranger in the Hospital bedroom assigned to [][Arora]." (ECF No. 65 at 11 ¶ 69.)

"To establish a cause of action in negligence, three essential elements must be proven: (1) duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 82 (S.C. 1998) (citing *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292 (S.C. 1996)). The Act is the exclusive remedy for individuals suing a governmental entity, its employees, or its agents for the commission of any tort, including negligence. *See* S.C. Code Ann. § 15-78-70(a) (2016); *see also Flateau v. Harrelson*, 584 S.E.2d 413, 416 (S.C. Ct. App. 2003) (citing S.C. Code Ann. § 15-78-20(b) (partially waiving sovereign immunity and providing for "liability on the part of the State, its political subdivisions, and employees, while acting within the scope of official duty"). The Act provides that a government employee who commits a tort while acting within the scope of his official duty is not personally liable unless the conduct was "not within the scope of his official duties or it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70(b) (2016). When asserting claims that fall within the provisions of the Act, a plaintiff must sue the governmental entity, not the individual employee. *See Flateau*, 584 S.E.2d at 417.

---

[6] "No award for damages under this chapter shall include punitive or exemplary damages or interest prior to judgment." S.C. Code § 15-78-120(5)(b) (2017).

In response to Arora's negligence claim, RMC submitted James' Affidavit in which he stated as follows regarding the January 4, 2012 incident:

> On Wednesday, January 4, 2012, at approximately 19:30 (7:30 p.m.), I was on duty as a TRMC security officer, employed by TRMC, and unarmed, when I received a call from Nursing Supervisor Shirley Shepherd, asking if security knew there were two uniformed officers on the second floor of the hospital, heading to a patient's room. I told Ms. Shepherd that security had not been informed of this. I then quickly proceeded to Room 2325, the room of Mr. Naresh Arora. I entered the room and found two armed and uniformed officers in the room, who stated they were from Denmark Technical College. They identified themselves to me as Chief Wallace and Officer Donald Williams. I asked them what they were doing in a patient's room. They stated they were serving him with papers. I informed him that was not how that should be done at TRMC, and that they should leave. Mrs. Arora appeared to be trying to calm Mr. Arora. An officer identified to me as Chief Wallace kept talking with the patient. I told the officers that they should have contacted security before coming to TRMC, that the patient was ill, and that their visit was improper. I again directed the officers to leave the room, and I stated that, if they wanted to speak further with the patient, they should do it at the patient's home or place of employment, not at TRMC. The officers left moments later.
>
> At the time of this incident, weekday visiting hours at TRMC were from 8:00 a.m. through 9:00 p.m., and the front doors of the hospital were open during those hours. This incident occurred during open visiting hours. The TRMC Visitation Policy and TRMC Security Management Plan in place at the time of this incident are attached hereto as exhibits. I have found no documentation of any request of Mr. Arora to restrict visitors prior to this incident. Thus, under the visitation policy, he could have visitors without restriction. These visitors, however, were unwelcome by him, and their presence apparently disturbed him, so they were requested by me to leave.

(ECF No. 95-3 at 2.) Due to Plaintiffs' failure to file opposition to the Motion for Summary Judgment, James' statements are not contradicted by Arora. Specifically, there is no evidence in the record to support a finding that RMC's conduct violated the Policy. *Cf. Guffey v. Columbia/Colleton Reg'l Hosp., Inc.*, 612 S.E.2d 695, 701 (S.C. 2005) ("Violation of a rule or regulation designed primarily for the safety of hospital patients will constitute negligence if the violation proximately results in the injury.") (citing *Steeves v. United States*, 294 F. Supp. 446, 455 (D.S.C. 1968)); *see also Caldwell v. K–Mart Corp.*, 410 S.E.2d 21, 24 (S.C. Ct. App. 1991)

("In negligence cases, internal policies or self-imposed rules are often admissible as relevant on the issue of failure to exercise due care." When defendant adopts internal policies or self-imposed rules and thereafter violates those policies or rules, a jury may consider such violations as evidence of negligence if they proximately caused a plaintiff's damages). Therefore, even if the court found that RMC had a legal duty as described by Plaintiffs,[7] the court cannot discern in the evidence a genuine dispute of material fact regarding whether RMC breached that legal duty to Arora. Accordingly, RMC is entitled to summary judgment with respect to Arora's negligence claim.

## V. CONCLUSION

For the foregoing reasons, the court **GRANTS** Regional Medical Center of Orangeburg's unopposed Motion for Summary Judgment as to Plaintiff Naresh C. Arora's claim for negligence. (ECF No. 188.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

June 22, 2018
Columbia, South Carolina

---

[7] The court observes that it did not locate any specific legal support for the duty alleged by Arora.